UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ROGER GRAVES, | ) |
| Plaintiff | ) ) ) |
| v. | ) Case No. 2:09 cv 401 |
| NORFOLK SOUTHERN RAILWAY COMPANY, | ) ) ) ) |
| Defendant | ) ) |

OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment [DE 14] filed by the defendant, Norfolk Southern Railway Company, on January 17, 2011. For the following reasons, the motion is GRANTED.

## Background

The defendant, Norfolk Southern Corporation, operates on a train track that runs through Hammond, Indiana, northwest towards Chicago and southeast towards Hobart, Indiana. The track crosses 169th Street in Hammond. There are two sets of tracks at this crossing, as well as crossing gates over the road on both the east and west sides of the intersection, flashers, and a bell, to warn of approaching trains. The gates were installed over the roadway and did not include pedestrian gates over the sidewalk. The warning devices were installed in 2004 as part of an agreement Norfolk entered with the City of Hammond. Norfolk was

required to modernize the grade crossing warning in conformance with the State of Indiana Special Provisions for Installation of Active Warning Devices at Highway-Railway Grade Crossings and the Manual on Uniform Traffic Control Devices for Streets and Highways. In turn, the State of Indiana applied for and obtained federal funding for the project from the Federal Highway Administration. Federal funds paid for 80 percent of the construction costs. Neither Norfolk's agreement with Hammond nor the applicable state and federal regulations required Norfolk to install pedestrian gates at the crossing, and none were installed. The warning gates and devices installed as part of this project still were in use in October 2007.

On October 31, 2007, the plaintiff, Roger Graves, was shopping at the Walgreens located on the south side of 169th Street in Hammond just west the railroad crossing. When he exited the store, he saw a train at the railroad crossing and walked to the corner. When the end of the train was in sight, he began jogging in an effort to cross to the north side of 169th Street before the traffic waiting at the crossing started to move. After crossing the street, Graves continued jogging down the sidewalk toward the crossing. He reached the crossing at about the same time the first train was clearing and decided to cross the tracks. When he looked up, he saw a second train approaching

from the other direction.  At his deposition, Graves testified that he decided "to gun it" to beat the second train across the tracks.  Graves explained that his momentum already was moving in that direction.  When he attempted to stop, he began to slide, and he believed if he did not dive across the tracks, he would have ended up under the train.  Graves proceeded to dive across the tracks to the east side of the crossing, but he was hit by the second approaching train.

At the time of the incident, the train was traveling approximately 30 mph, and the train's engineer, Robert Larson, was sounding the train's horn.  The flashers and gates were operating, the gates were down, and traffic on both sides of the crossing was stopped.

Graves filed a complaint on October 30, 2009, alleging that the train crossing is an ultra hazardous crossing because it did not have pedestrian gates and that the defendant failed to exercise reasonable care in the ownership, maintenance, control, and operation of the railroad tracks and crossing.  Norfolk now moves for summary judgment, arguing that federal law preempts state law because the crossing primarily was paid for with federal funds.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no

genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Stephens v. Erickson, 569 F.3d 779, 786 (7th Cir. 2009). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. Adickes v. S.H. Kress & Company, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); Stephens, 569 F.3d at 786. A fact is material if it is outcome determinative under applicable law. There must be evidence on which the jury could reasonably find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); Stephens, 569 F.3d at 786; Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008).

Summary judgment is inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles. Ashman v. Barrows, 438 F.3d 781, 784 (7th Cir. 2006). Upon review, the court does not evaluate the weight of the evidence, judge the credibility of witnesses, or determine the ultimate truth of the matter; rather, the court will determine whether there exists a genuine issue of

triable fact. Wheeler, 539 F.3d at 634 (citing Anderson, 477 U.S. at 248, 106 S.Ct. at 2510).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> Anderson, 477 U.S. at 250, 106 S.Ct. at 2511

See also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-122 (2000) (setting out the standard for a directed verdict); Celotex Corp., 477 U.S. at 322-23, 106 S.Ct. at 2553; Stephens, 569 F.3d at 786; Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008) (stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); Springer v. Durflinger, 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is

5

sufficient evidence for a jury to return a verdict for the nonmoving party).

The defendant contends that Indiana tort law, with respect to the adequacy of the warning devices at 169th Street, is preempted by the Federal Highway Safety Act of 1973, 23 U.S.C. §130 et. seq., and regulations promulgated thereunder. Among the provisions of the FHSA, Congress has established the Federal Railway-Highway Crossings Program in an effort to provide federal funds to participating states for the "cost of construction of projects for the elimination of hazards of railway-highway crossings." Norfolk Southern Railway Company v. Shanklin, 529 U.S. 344, 348, 120 S.Ct. 1467, 1471, 146 L.Ed.2d 374 (2000) (quoting 23 U.S.C. §130(a)). Participation in the Crossings Program requires that the participating state must "conduct and systematically maintain a survey of all highways to identify those railroad crossing which may require separation, relocation, or protective devices, and establish and implement a schedule of projects for this purpose." 23 U.S.C. §130(d). Under the statute, this schedule at least must provide signs for all railway-highway crossings. Shanklin, 529 U.S. at 349, 120 S.Ct. at 1471.

In administering the Crossings Program, a number of regulations have been implemented addressing the design of grade crossings. Shanklin, 529 U.S. at 348-49 120 S.Ct. at 1471. See, e.g.,

6

23 C.F.R. §646.214(b). Under 23 C.F.R. §§646.214(b)(3) and 646.214(b)(4), the Federal Highway Administration has set requirements for warning devices at railway grade crossings. Shanklin, 529 U.S. at 349, 120 S.Ct. at 1472. These regulations establish what constitutes an adequate warning device for projects installed with federal funds. Automatic gates and warning lights are required as adequate warning devices for crossings which involve the following conditions: multiple main line railroad tracks, multiple tracks in the vicinity where one train might obscure the movement of another train, high speed trains combined with limited sight distances, a combination of high speeds and moderately high volumes of highway and railroad traffic, the use of the crossing by substantial numbers of school buses or trucks carrying hazardous materials, or where they are recommended by a diagnostics team. 23 C.F.R. §646.214(b)(3); Shanklin, 529 U.S. at 349, 120 S.Ct. at 1472. For railway crossings not meeting any of these conditions, "the type of warning device to be installed, whether the determination is made by a state regulatory agency, and/or the railroad, is subject to the approval of FHWA." 23 C.F.R. §646.214(b)(4).

The Supreme Court previously has ruled that these regulations preempt state tort law on matters covering the same topic where warning devices actually have been installed using federal

funds. CSX Transportation, Inc. v. Easterwood, 507 U.S. 658, 670, 113 S.Ct. 1732, 1741, 123 L.Ed.2d 387 (1993). This preemption includes any claims under state tort law that a grade crossing is extra-hazardous and that the warning devices provided at the crossing are inadequate. Shanklin, 529 U.S. at 358, 120 S.Ct. at 1477. In Shanklin, the plaintiff's decedent was fatally injured when he attempted to cross the tracks and his car was struck by an oncoming train. The crossing did not provide automatic gates or flashers, but instead it was equipped with reflectorized crossbucks. The crossbucks were installed as a part of the Crossings Program which affected a total of 196 crossings throughout the state. The project was approved by the FHWA, and the warning devices were paid for almost exclusively with federal funds. Shanklin concluded that state tort law was displaced on the subject because 23 C.F.R. §§646.214(b)(3) and 646.214(b)(4) established a federal standard of adequacy for the devices. Shanklin, 529 U.S. at 357-58, 120 S.Ct. at 1476. As noted in Shanklin, preemption occurred "[o]nce the FHWA approved the project and the signs were installed using federal funds . . . ." Shanklin, 529 U.S. at 359, 120 S.Ct. at 1477. "Whether the State should have originally installed different or additional devices, or whether conditions at the crossing have since changed . . . is immaterial to the preemption question . . . What States cannot do

- once they have installed federally funded devices at a particular crossing - is hold the railroad responsible for the adequacy of those devices." Randall v. Norfolk Southern Railway Co., 800 N.E.2d 951, 955-56 (citing Shanklin, 529 U.S. at 357-58, 120 S.Ct. at 1476). Preemption attaches at the time federal funds are used to install warning devices, regardless of whether an express determination of adequacy has been made. See Shanklin, 529 U.S. at 356, 120 S.Ct. at 1475. See also Ingram v. CSX Transportation, Inc., 146 F.3d 858, 863 (11th Cir. 1998); Armijo v. Atchison, Topeka & Santa Fe Railroad Co., 87 F.3d 1188, 1192 (10th Cir. 1996); Elrod v. Burlington Northern Railroad Co., 68 F.3d 241, 244 (8th Cir. 1995).

It is undisputed that safety measures at the 169th Street crossing were installed almost exclusively with federal funds under a program approved by the FHWA. Once this occurred, federal law preempted any state law claim regarding the adequacy of the warning device at that particular crossing. See Shanklin, 529 U.S. at 359, 120 S.Ct. at 1477. Because there were two mainline railroad tracks at the crossing, the regulations required that the track be equipped only with automatic gates and flashing light signals, and these precautions were followed. Neither the regulations, other nationally recognized design guidelines and standards, nor Norfolk's agreement with Hammond and the State of

Indiana, required the installation of pedestrian gates. Because the crossing was financed with federal funds and the defendant complied with the federal regulations, Graves cannot now assert a state law tort claim against Norfolk for the deficiency of safety measures.

Graves attempts to distinguish his incident on two grounds. First, he argues that federal preemption does not apply because he was a pedestrian, and the cases addressing the matter have concerned injuries to people operating a vehicle. However, federal preemption is not considered on a case-by-case basis. If it is determined that the federal government intended to preempt state law in one area, the entire subject is preempted regardless of the type of plaintiff that comes forth. Because it previously was determined that any claims under state tort law that a grade crossing is extra-hazardous and that the warning devices provided at the crossing are inadequate cannot be raised against the railroad when federal funds were used to install the warnings, and Graves' complaint concerns the adequacy of the warning devices at the railroad crossing, his claim is preempted and cannot be brought against Norfolk. See Shanklin, 529 U.S. at 359, 120 S.Ct. at 1477.

Next, Graves argues that Norfolk did not comply with the federal regulations. The regulations require the installation of

automatic gates and flashing light signals when there are multiple main line railroad tracks at the crossing. 23 C.F.R. §646.214(b)(3)(i)(A). Graves asserts that in light of this regulation, Norfolk was required to install a pedestrian gate because two mainlines crossed the pedestrian walkway. However, pedestrian gates are considered a separate safety regulation from the automatic gates and flashing light signals contemplated by 23 C.F.R. §646.215. See Federal Highway Administration, 74 Fed. Reg. 240, 66855, 2009 WL 4822301, (Dec. 16, 2009) (available at http://edocket.access.gpo.gov/2009/pdf/E9-28322.pdf) ("The FHWA also proposed to recommend that the LOOK sign and/or pedestrian gates should be considered if an engineering study shows that flashing-light signals with a Crossbuck sign and an audible device would not provide sufficient notice of an approaching light rail transit vehicle.").

At the time the safety devices were installed at the crossing on 169th Street, neither federal law nor state law expressly required the installation of pedestrian gates at multi-lane crossings. Provided that the federal regulations have been complied with, preemption attaches when federal funds are expended on the project, regardless of whether an express determination of adequacy has been made by the FHWA. See Shanklin, 529 U.S. at 356, 120 S.Ct. at 1475. Because the warning devices were

11

installed with federal funds and complied with the demands of the federal regulations, Graves' complaint is preempted by federal law, and he cannot assert a state law tort claim against Norfolk concerning the adequacy of the safety devices.

_____

Based on the foregoing, the Motion for Summary Judgment [DE 14] filed by the defendant, Norfolk Southern Railway Company, on January 17, 2011, is GRANTED.

ENTERED this 31st day of May, 2011

                              s/ ANDREW P. RODOVICH
                                 United States Magistrate Judge